IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ASHLEY L. RHODENIZER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:09CV306 |
| ) | |
| CITY OF RICHMOND ) | |
| POLICE DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Plaintiff's motion to compel (Docket No. 13) and Defendant's motion for a protective order (Docket No. 20). For the reasons set forth herein, Plaintiff's motion to compel is GRANTED in PART and DENIED in PART; and Defendant's motion for a protective order is GRANTED in PART and DENIED in PART.

### I. BACKGROUND

Plaintiff Ashley L. Rhodenizer, formerly Ashley L. Farlow, filed this action in April 2009, alleging that her former employer, Defendant City of Richmond Police Department, violated her civil rights as proscribed in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. (Compl. ¶ 1). Specifically, Plaintiff alleges that she was subjected to a hostile work environment (Count I) and suffered retaliation for her opposition to such unlawful practices (Count II). (Compl. ¶ 1). More precisely, she contends that the Defendant subjected her to adverse terms and conditions including, but not limited to, false accusations of improper conduct, "write-ups," and other

formal disciplinary actions. (Compl. ¶¶ 12-15).

Plaintiff issued her first discovery requests to the Defendant on July 17, 2009. (Def.'s Response to Mot. to Compel 1). Plaintiff's request included a demand for production of "all documents that set forth or refer to any internal affairs investigation of [the Plaintiff]." (Pl.'s Mem. Supp. Mot. to Compel 3). Defendant objected to the request on August 5, 2009 on the basis of work product, attorney-client privilege, and executive privilege; but on August 25, 2009, the Defendant produced, without waiving its previous objections, the Plaintiff's Internal Affairs Division ("IAD") card.[1] (Def.'s Response to Mot. to Compel 2). Defendant also produced a privilege log for the files that correspond with the citizen complaints listed on Plaintiff's IAD card, asserting in the log that the contents of the files were protected by executive privilege. (Id.).

Plaintiff requests that the Court compel production of seven files concerning the IAD's investigations of six citizen complaints against Plaintiff. (Pl.'s Mem. Supp. Mot. to Compel 1). She contends that citizen complaints are investigated and handled differently if they are against female officers than when they involve male officers, and that the IAD files could therefore be relevant evidence of such disparity. (Id. at 5-7). Defendant seeks a protective order prohibiting discovery of the IAD files on the ground that they are protected by executive privilege. (Def.'s Response to Mot. to Compel 4; Def.'s Mot. for Protective Order 1).

## II. GOVERNING STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits parties to obtain discovery

---

[1] An IAD card is a record that logs all of the citizen complaints made against an officer and investigated by the IAD. The card reflects the name of the complainant, the nature of the complaint, and the disposition of the complaint after the investigation has concluded.

2

regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. Pro. 26(b)(1). The burden is on the person objecting to the discovery -- here, the Defendant -- to demonstrate that such discovery should not be permitted. Castle v. Jallah, 142 F.R.D. 618, 620 (E.D. Va. 1992). Rule 501 of the Federal Rules of Evidence provides that "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States." Fed. R. Evid. 501. Under the common law, executive privilege is defined as "the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." Castle, 142 F.R.D. at 620 (quoting Clark v. Township of Falls, 124 F.R.D. 91, 92 (E.D. Pa. 1988)). The purpose of the privilege is to protect the governmental decisionmaking process by precluding discovery of "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Id. at 620-21. "Application of the official privilege is founded on the belief that there are certain governmental processes related to legal and policy decisions which cannot be carried out effectively if they must be carried out under the public eye." Greene v. Thalhimer's Department Store, 93 F.R.D. 657, 659 (E.D. Va. 1982) (quoting Branch v. Phillips Petroleum Co., 638 F.2d 873, 881-82 (5th Cir. 1981)).

There are two important limitations on the exercise of executive privilege. Id. First, the privilege does not protect communications or reports made after completion of the deliberative process inasmuch as discovery of such materials could not jeopardize the decisionmaking function that has already been concluded. Id. Second, the privilege does not protect purely factual material, even if contained within deliberative memoranda, where the factual material is

3

severable from its context. Id.; Castle, 142 F.R.D. at 621.

The leading case on executive privilege, which is cited frequently for its thorough analysis, is Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973). See, e.g., Castle, 142 F.R.D. at 621 (citing Frankenhauser). Therein, the court stated that when executive privilege is asserted, "the court must balance the public interest in the confidentiality of governmental information against the need of a litigant to obtain data, not otherwise available to him, with which to pursue [his] cause of action." Frankenhauser, 59 F.R.D. at 344. The court established ten factors to be considered, on a case-by-case basis, for the evaluation of the applicability of executive privilege:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
> (2) the impact upon persons who have given information of having their identities disclosed;
> (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;
> (4) whether the information sought is factual data or evaluative summary;
> (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
> 6) whether the police investigation has been completed;
> (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;
> (8) whether the plaintiff's suit is non-frivolous and brought in good faith;
> (9) whether the information sought is available through other discovery or from other sources; and
> (10) the importance of the information sought to the plaintiff's case.

Id.

In Frankenhauser, plaintiffs sought witness statements and police investigative materials concerning the death of a family member who was shot by an officer. Id. at 339-40. The defendants refused to accede to plaintiffs' requests on the ground that the documents were subject to executive privilege. Id. at 342. Considering each of the ten factors as noted above, the

court held that the plaintiffs were entitled to discovery of the witness statements and those portions of the police reports containing purely factual data. Id. at 345. Specifically, the court noted that the great majority of cases that have considered the discoverability of law enforcement investigative materials have held that such discovery should be barred in ongoing investigations, but should be permitted when an investigation and related prosecution have been concluded. Id. at 343-44. The court also rejected the argument that disclosure in the rare instances where it is being made pursuant to a court order after application of the ten factor balancing test would have a chilling effect on the ability to obtain full and candid reporting from citizens and officers in the future. Id. at 344. Additionally, the court noted that the disclosure, limited to purely factual matters, would not reveal any details of police self-evaluation in any event. Id.

### III. ANALYSIS

Defendant asserts that the contents of the files are subject to the application of executive privilege to the extent that they contain confidential details of IAD investigations of Plaintiff and other police officers, as well as memoranda reflecting the IAD's mental and deliberative processes. (Def.'s Response to Mot. to Compel 6-7). Specifically, as to the latter, Defendant asserts that IAD investigations are intended to deter repetition of police misconduct through internal checks and self-evaluation, and that disclosure of such investigative files would be contrary to the public interest. (Id.). According to Defendant, disclosure of the contents of the confidential files would thwart the investigative process by discouraging citizens and officers from providing statements, and would also impact inter-departmental relationships among various law enforcement officers. (Id.). Counsel for the Defendant urges that he is most concerned about protecting the identities of the officers, supervisors, complainants, and

5

witnesses who assisted in the investigations and the deliberative processes that were used to resolve each complaint.

Upon review of the seven files, which were produced to the Court for in camera review, the Court finds that the files contain mostly factual material which is not protected by the claim of executive privilege.  Moreover, each of the six investigations have been concluded, and thus discovery of the minimal deliberative material contained within the files would not jeopardize a decisionmaking function.  Moreover, as noted by Plaintiff's counsel, Defendant has already disclosed the full name of each citizen complainant as well as the disposition of each complaint in the IAD card.  As in Frankenhauser, it is unlikely that a limited disclosure to Plaintiff and her counsel, especially under the controlled conditions of an appropriate Protective Order, would thwart governmental process by discouraging citizens or officers from being forthcoming in the future.  Moreover, any negative impact upon the individuals who provided information seems unlikely as well.  Nor has Defendant shown how the self-evaluative process would otherwise be significantly chilled by the limited disclosure of these files to the Plaintiff; and, indeed, the very nature of the pending action is to challenge the deliberative process involved, whereby if the files were to reveal that the police department treated complaints against female officers differently than those against males, such would be important evidence of discrimination in support of Plaintiff's case.  In fact, if an individual involved in the deliberative process were to testify at trial and was questioned by Plaintiff's counsel as to the basis for whatever disciplinary decision that is relevant to the pending claim(s), the Court would be constrained to allow access to the related deliberative portion of the respective IAD file in any event.  Accordingly, the IAD files are discoverable.

At the same time, the Court is mindful of the Defendant's particular concern with protecting the identities of the officers and supervisors who were involved with each investigation. In order to accommodate the concern, the Court will permit Defendant to redact the names and contact information for each officer or supervisor who assisted in the investigation, and to supplement each name with only a gender-specific identifier. Should Plaintiff seek to contact any said officer or supervisor for further evidentiary purposes, counsel is directed to seek prior leave of the Court to do so, and each such request will then be addressed by the Court on the basis of good cause.

## IV. CONCLUSION

For the reasons discussed herein, Plaintiff's motion to compel (Docket No. 13) is GRANTED in PART and DENIED in PART; and Defendant's motion for a protective order (Docket No. 20) is GRANTED in PART and DENIED in PART.

An appropriate Order shall issue.

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: October 14, 2009